**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS**

**AZ Automotive Corp.,**

    **Plaintiff,**

v.                                                                       Case No. 09-2308-JWL

**United Automobile, Aerospace, and
Agricultural Implement Workers of
America International Union, AFL-CIO
and UAW Local 710,**

    **Defendants.**

## MEMORANDUM AND ORDER

On April 1, 2009, defendants United Automobile, Aerospace, and Agricultural Implement Workers of America International Union and UAW Local 710 (collectively "UAW") filed a grievance under the parties' collective bargaining agreement challenging plaintiff AZ Automotive Corporation's interpretation and application of certain wage progressions set forth in Appendix A of the collective bargaining agreement. Thereafter, Plaintiff AZ Automotive Corporation filed this lawsuit seeking a declaratory judgment that the grievance asserted by the UAW is not arbitrable. The UAW, in turn, filed a counterclaim seeking a declaratory judgment requiring the parties to arbitrate the grievance. This matter is now before the court on the parties' cross-motions for summary judgment. As will be explained, plaintiff's motion for summary judgment is granted and the UAW's motion for summary judgment is denied.

**Facts**

The following facts are either stipulated by the parties in the pretrial order or uncontroverted by the parties in their summary judgment submissions. Plaintiff AZ Automotive Corporation is an automotive supplier with a facility located in Lenexa, Kansas. Plaintiff produces rear-end assemblies for the Chevy Malibu manufactured by General Motors. The UAW defendants are the exclusive bargaining representatives of a bargaining unit consisting of all hourly full-time and regular part-time production and maintenance employees at plaintiff's Lenexa facility. Plaintiff and the UAW are signatories to a collective bargaining agreement entered into on March 25, 2009, effective through March 24, 2013. That agreement was in effect at the time of the grievance giving rise to this dispute.

The wage structure governing employees in the bargaining unit is contained in Appendix A to the collective bargaining agreement. The one-page appendix is essentially a chart setting forth the four classifications of employees and the starting hourly wages and wage progressions for such employees during the course of their employment. The wage progressions for all classifications except for maintenance employees consist of thirty-cent increases every six months. For example, then, a "team associate" receives a starting hourly wage of $11.60 and, after six months of service, receives $11.90 per hour and so on until that employee has 4 years of service and reaches the top wage of $14.00 per hour. Below the wage progression chart, however, is a sentence that states "All Employees except maintenance hired on or after March 22, 2005 shall be paid two ($2.00) dollars below the start rate with a fifty (.50¢) cent increase at the completion of each six (6) months of employment until the prevailing rate for the

2

classification is attained." It is undisputed by the parties, then, that Appendix A provides for two different wage progressions–one for employees hired before March 22, 2005 and another for employees hired on or after March 22, 2005.

Following ratification of the collective bargaining agreement in March 2009, plaintiff began interpreting and applying the wage structure provided in Appendix A differently than it had under the parties' previous collective bargaining agreement although the wage structure set forth in Appendix A was not changed in any respect from the prior agreement to the current agreement. During the life of the prior agreement, employees hired on or after March 22, 2005 received, every six months, not only the fifty-cent increase described in the text concerning the wage progression for those employees hired on or after March 22, 2005 but also the thirty-cent increase scheduled in the wage progression chart. After ratification of the 2009 agreement, plaintiff notified the UAW that employees hired on or after March 22, 2005 would receive only the fifty-cent increase. As a result of plaintiff's change in the application of the wage structure, plaintiff recalculated the hourly wage rate of those employees still in the wage progression and reduced the hourly wage rates of those employees.

On April 1, 2009, the UAW filed a grievance protesting plaintiff's interpretation and application of the provisions set forth in Appendix A. After the parties were unable to resolve the grievance, the UAW demanded that plaintiff proceed to binding arbitration on the grievance under the collective bargaining agreement's arbitration provisions. Plaintiff refused the UAW"s demand, arguing that the grievance is expressly excluded from arbitration pursuant to paragraph 42 of the parties' agreement, which states, in pertinent part, that "No questions affecting the

3

negotiated wage structure of the Company shall be arbitrated." Thereafter, plaintiff filed this lawsuit seeking a declaratory judgment that the grievance asserted by the UAW is not arbitrable. The UAW, in turn, filed a counterclaim seeking a declaratory judgment requiring the parties to arbitrate the grievance.

**Discussion**

In resolving whether the UAW's grievance is arbitrable under the terms of the parties' collective bargaining agreement, the court begins by "acknowledging that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Local 5-857 Paper, Allied-Industrial, Chem. & Energy Workers Int'l Union v. Conoco Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003) (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)). Thus, while there is a presumption in favor of arbitrability when a contract, like the one here, contains an arbitration clause, a dispute will not be subject to arbitration if the contract contains an express provision excluding the particular grievance from arbitration. *Id.* (citing *AT&T Techs.*, 475 U.S. at 650); *accord Oil, Chem. & Atomic Workers Int'l Union, Local 2-124 v. American Oil Co.*, 528 F.2d 252, 254 (10th Cir. 1976) (national policy that doubts are to be resolved in favor of arbitrability does not apply where there is an express provision excluding a particular grievance from arbitration).

The question framed by the parties' summary judgment submissions, then, is whether the provision in paragraph 42 of the parties' collective bargaining agreement "expressly" excludes

4

the UAW's grievance from arbitration.[1] To resolve this question, the court looks first to the language of the provision in paragraph 42 and then to the UAW's particular grievance in this case. The provision in paragraph 42 of the agreement relied upon by plaintiff states that "No questions affecting the negotiated wage structure of the Company shall be arbitrated." Plaintiff contends that this provision is unambiguous and expressly excludes from arbitration any grievance affecting the wage structure set forth in Appendix A of the parties' agreement. The court agrees. Indeed, the parties do not dispute that Appendix A sets forth the negotiated wage structure of the company. Clearly, then, the provision in paragraph 42 excludes from arbitration any questions "affecting" the wage structure set forth in Appendix A.

The UAW, however, contends that the provision does not "expressly" exclude its grievance from arbitration because the provision is unlike certain other "exclusions" in the parties' agreement in two respects. First, according to the UAW, the exclusionary language in paragraph 42 does not mirror the language used in other paragraphs excluding certain topics from the grievance and arbitration procedure, such as the discharge of probationary employees; complaints concerning group insurance; and the exercise of management rights. Second, the UAW contends that the provision in paragraph 42 cannot be deemed express because it is not set forth in a separate paragraph like the exclusions concerning probationary employees, group insurance and the exercise of management rights. According to the UAW, the exclusion relied

---

[1] In resolving that question, it is undisputed by the parties that there is no side agreement nor any bargaining history concerning that provision that affects the court's interpretation of the provision.

5

upon by plaintiff is "hidden" in paragraph 42, which reads in its entirety as follows:

> The Arbitrator shall not have jurisdiction to add to, subtract from, or modify any of the terms of this Agreement; not shall he exercise any responsibility or function of the Company or the Union. No questions affecting the negotiated wage structure of the Company shall be arbitrated. The Arbitrator's award shall be made in writing and shall be final and binding. The Arbitrator shall render his decision in writing not later than thirty (30) calendar days from the date of the conclusion of the arbitration hearing.

In the court's view, the difference in the exclusionary language used in the relevant provision of paragraph 42 and its placement within paragraph 42 (as opposed to a separate paragraph) stems from the difference in the nature of the exclusion. While the other exclusions highlighted by the UAW concern certain categories of disputes that are not subject to the grievance and arbitration procedure in any respect, the provision in paragraph 42 appears to recognize that while there may be certain grievances that are subject to arbitration, if questions arise during the course of the arbitration proceedings that affect the negotiated wage structure, then those questions are not arbitrable even though other aspects of the grievance are arbitrable.

The UAW next contends that the provision in paragraph 42 is ambiguous in any event because it is subject to multiple reasonable interpretations including, by way of example, the exclusion of grievances concerning applicable overtime rates for certain work or grievances concerning applicable wages for holiday pay and vacation pay. But whether these subjects might also be excluded under the provision in paragraph 42 is certainly not inconsistent with plaintiff's interpretation of the provision that excludes any questions affecting the wage structure set forth in Appendix A. There is certainly no argument from the UAW that the provision might reasonably concern only overtime pay or holiday pay; the UAW simply argues that the provision

6

could reasonably exclude a broad range of issues. The point is that even if the provision excludes a range of issues, there is no interpretation of the provision that would not reasonably exclude questions affecting the wage structure found in Appendix A and the UAW offers no interpretation of the provision under which its grievance would be arbitrable. In short, then, the court agrees with plaintiff that the provision in paragraph 42 unambiguously excludes from arbitration any questions affecting the wage structure set forth in Appendix A.

The next question, then, is whether the UAW's grievance "affects" the wage structure set forth in Appendix A. Plaintiff contends that the UAW's grievance–which directly concerns the wage structure set forth in Appendix A and demands a change in the hourly wage rates of certain employees as well as periodic increases of an additional thirty cents per hour–plainly "affects" the negotiated wage structure. The court agrees. It is beyond dispute that Appendix A sets forth a separate wage progression for those employees hired on or after March 22, 2005. Those employees are paid two dollars below the start rate "with a fifty (.50¢) increase at the completion of each six (6) months of employment until the prevailing rate for the classification is attained." Clearly, the language concerning the "prevailing rate" references the rates set forth in the table of wages–a table that necessarily applies only to those employees hired before March 22, 2005. The UAW's grievance seeks to have those employees hired on or after March 22, 2005 receive both the thirty-cent increase scheduled in the table of wages that clearly applies only to employees hired before March 22, 2005 as well as the fifty-cent increase provided in the

paragraph that expressly governs those employees hired on or after March 22, 2005.[2] The grievance also seeks a higher hourly wage rate for those employees still in the wage progression whose wages plaintiff recalculated after ratification of the contract. Without a doubt, then, the UAW's grievance affects the negotiated wage structure set forth in Appendix A because it seeks an increase in hourly wage rates for those employees hired on or after March 22, 2005.[3] That grievance, then, is expressly excluded from arbitration by virtue of paragraph 42 of the collective bargaining agreement.[4]

The UAW's final argument is that, at a minimum, the court should direct plaintiff to proceed to arbitration on the issue of whether the grievance is arbitrable. Although the UAW acknowledges that the issue of arbitrability is "undeniably an issue for judicial determination," *AT&T Techs.*, 475 U.S. at 649, it contends that the parties to the collective bargaining agreement

---

[2]To the extent the court touches on the merits of the grievance in resolving this dispute, the UAW has encouraged it to do so.

[3]The UAW emphasizes that its grievance focuses on two distinct acts–plaintiff's reduction of the hourly rates of certain employees still in the wage progression and plaintiff's change in the manner in which it calculates the wage progressions for those employees hired on or after March 22, 2005. But even assuming the grievance challenges two separate acts, the nature of the relief sought is the same–an increase in the hourly wage rates (either by virtue of an increase in the hourly rate itself or higher periodic increases) of those employees hired on or after March 22, 2005. The grievance, then, "affects the negotiated wage structure of the Company" and is not subject to arbitration.

[4]Indeed, in arguing that the provision in paragraph 42 is ambiguous, the UAW surmises that the provision may have been intended "to restrict the arbitrator's ability to change the specific wage amounts set forth in the table of wages contained in Appendix A." As explained, the UAW's grievance seeks to accomplish just that–a change in the specific wage amounts described in Appendix A for those employees hired on or after March 22, 2005. Thus, even under the UAW's proffered interpretation of the provision, its grievance is plainly excluded from arbitration.

8

have delegated that authority to the arbitrator in light of the placement of the provision within the paragraph discussing the arbitrator's authority and obligations. The court disagrees. The Supreme Court has held that the question of whether a dispute is arbitrable is for the court rather than the arbitrator unless the collective bargaining agreement "clearly and unmistakably" provides otherwise. Id. The mere placement of the provision within paragraph 42 does not constitute clear and unmistakable evidence that the parties agreed to arbitrate arbitrability, particularly when, as explained above, a rational explanation exists for the placement of the specific provision within paragraph 42. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.").

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for summary judgment (doc. 26) is granted and defendants' motion for summary judgment (doc. 24) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** the clerk shall enter a declaratory judgment that the April 1, 2009 grievance filed by defendants against plaintiff is not arbitrable and defendants cannot compel plaintiff to arbitrate defendants' April 1, 2009 grievance.

**IT IS SO ORDERED.**

Dated this 14th day of May, 2010, at Kansas City, Kansas.

                                             s/ John W. Lungstrum  
                                             John W. Lungstrum  
                                             United States District Judge